UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:23-CR-00101-DCLC-CRW |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES NILE MIXON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss Indictment [Doc. 20], Motion to Dismiss Count Three of the Indictment [Doc. 21] and Motion to Sever [Doc. 23]. Each of the foregoing motions are ripe for review. For the reasons stated herein, Defendant's motions are **DENIED**.

**I.    BACKGROUND**

On May 24, 2023, the Bristol Tennessee Police Department ("BTPD") responded to a report of a carjacking and aggravated kidnapping [Doc. 20, pg. 1]. The victim reported that, as she was entering her Ford Mustang shortly before 3:00 a.m., a man approached her driver side window, pointed a pistol at her face, and threatened to kill her if she did not move over into the passenger seat [*Id*. at pg. 2]. She reported that she moved to the passenger seat and the man entered the vehicle [*Id*.]. As the man began to drive, however, she exited the vehicle from the passenger side [*Id*.]. The Mustang was recovered at a gas station in Kingsport, Tennessee [*Id*.]. The keys were lying in the seat, but the victim's wallet and backpack were missing [*Id*.]. A witness claimed to see the man park the Mustang and steal a second vehicle while it was parked by the doors of the

1

gas station [*Id*.]. Police recovered the second vehicle, along with the victim's wallet and other items from the Mustang, approximately six miles away on the side of the road [*Id*.].

On May 25, 2023, investigators with the Bristol Virginia Police Department ("BVPD") contacted a BTPD investigator and reported that they received a call that morning from Gordon Wood, Defendant's stepfather, informing that Defendant woke him up saying he was wanted by law enforcement for carjacking a female [Doc. 29, pg. 2]. BVPD further informed that Defendant reportedly took Mr. Wood's firearm, a 9mm Walther pistol, and left the house on a bicycle with the firearm in a fanny pack [Doc. 20, pg. 3; Doc. 29, pg. 2]. BVPD officers stopped Defendant in front of a bicycle shop in Bristol, Tennessee, less than a mile away from Mr. Wood's home, and arrested him [*Id*.]. Officers recovered a loaded Walther PPK pistol from Defendant's fanny pack [Doc. 29, pg. 3].

Based on the foregoing, on August 8, 2023, the grand jury returned a four-count Indictment charging Defendant with carjacking in violation of 18 U.S.C. § 2119, brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c), being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and possessing a stolen firearm in violation of 18 U.S.C. § 922(j) [Doc. 1]. Defendant now moves to dismiss the Indictment [Doc. 20]; dismiss Count Three of the Indictment [Doc. 21]; and to sever the first two counts from the second two counts [Doc. 23]. Each of the motions are addressed in turn.

## II.    MOTION TO DISMISS INDICTMENT

Defendant moves to dismiss the Indictment because the statutes under which he is charged allegedly exceed Congress' power under the Commerce Clause as applied to him [Doc. 20, pg. 4]. Specifically, he asserts that the Government cannot establish that his alleged actions had the requisite substantial nexus to interstate commerce [*Id*.].

2

Under the Commerce Clause, U.S. Const., Art. I, § 8, cl 3, Congress may regulate, in relevant part, "activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce[.]" *United States v. Lopez*, 514 U.S. 549, 558 (1995). In *Lopez*, the Supreme Court held that the Gun-Free School Zones Act of 1990[1] exceeded Congress' commerce clause authority because it "neither regulate[d] a commercial activity nor contain[ed] a requirement that the possession be connected in any way to interstate commerce." *Id*. at 551. Of particular importance, the Court in *Lopez* noted that the Act "contain[ed] no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id*. at 561.

A decade later, the Supreme Court invalidated a portion of the Violence against Women Act ("VAWA"), which provided civil remedies for "crime[s] of violence motivated by gender[,]" because (1) the activity at issue was not "economic in nature" and (2) the statutory provision contained "no jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce." *United States v. Morrison*, 529 U.S. 598, 605, 613 (2000). Shortly after *Morrison*, the Supreme Court held that the federal arson statute, 18 U.S.C. § 844(i), "does not cover the arson of an owner-occupied dwelling" because, by its terms, it "covers only property currently used in commerce or in an activity affecting commerce." *Jones v. United States*, 529 U.S. 848, 859 (2000).

Relying on the foregoing, Defendant argues that the statutes under which he is charged exceed Congress' Commerce Clause authority. Specifically, he asserts that his alleged possession of a firearm in violation of 18 U.S.C. § 922(g)(1) was purely local and not part of any commercial

---

[1] The Act, formerly codified at 18 U.S.C. § 922(q), prohibited possession of a firearm "at a place that the individual knows, or has reasonable cause to believe, is a school zone." *Lopez*, 514 U.S. at 551.

activity; his alleged possession of a stolen firearm in violation of 18 U.S.C. § 922(j) was a purely local act occurring within Tennessee and Virginia; the alleged carjacking in violation of 18 U.S.C. § 2119 occurred entirely within Tennessee and involved a purely local crime; and, finally, the charge for use of a firearm in relation to the alleged carjacking in violation of 18 U.S.C. § 924(c) lacks a valid jurisdictional hook to interstate commerce. Each of the foregoing arguments are addressed in turn.

### 1. Felon in Possession: 922(g)(1)

Section 922(g)(1) makes it "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). Although Defendant recognizes that the statute contains a jurisdictional element, he asserts that, under *Lopez* and *Morrison*, the element must require more than a minimal nexus to interstate commerce [Doc. 20, pg. 8]. And he asserts that the connection to interstate commerce alleged by the Government here, that the firearm was manufactured outside of Tennessee, is not enough [*Id*.]. Finally, Defendant asserts that *Jones* "supports a narrow reading of § 922(g)'s jurisdictional hook" [*Id*.]. "[A]s *Jones* required that a building be 'actively employed' in commerce, not merely have a passive connection," Defendant asserts that "§ 922(g) should be read to require active, ongoing engagement in interstate commerce" rather than "any past or passive connection" [*Id*.].

As an initial matter, "every court of appeals that has been faced with the Commerce Clause challenge to § 922(g) since *Lopez* has held that 'the jurisdictional element of § 922(g) provides the requisite nexus with interstate commerce that [the Gun-Free School Zones Act] lacked.'" *United*

4

*States v. Napier*, 233 F.3d 394, 400 (6th Cir. 2000) (quoting *United States v. Turner*, 77 F.3d 887, 889 (6th Cir. 1996)).  Additionally, the Sixth Circuit has held that "*Lopez* . . . did not disturb the Supreme Court's precedents which indicate that a firearm that has been transported at any time in interstate commerce has a sufficient effect on commerce to allow Congress to regulate the possession of that firearm pursuant to its Commerce Clause powers." *United States v. Chesney*, 86 F.3d 564, 570–71 (6th Cir. 1996).  And *Jones* does not invalidate this binding precedent. *Napier*, 233 F.3d at 401 (quoting *Scarborough v. United States*, 431 U.S. 563, 575 (1977)) ("Nothing in *Jones* suggests that the Supreme Court is backing off of its opinion that § 1202(a), the predecessor of § 922(g)(1), required only 'the minimal nexus that the firearm have been, at some time, in interstate commerce.'").

In sum, "proof that a firearm moved in interstate commerce at any time is sufficient to meet the government's burden of proving the 'in commerce or affecting commerce' element[.]" *United States v. Chesney*, 86 F.3d 564, 571 (6th Cir. 1996) (quoting *Scarborough v. United States*, 431 U.S. 563, 566–67 (1977)).  Thus, the Government's allegation that the firearm allegedly possessed by Defendant was manufactured outside of the state of possession establishes a sufficient nexus to interstate commerce to bring Defendant's conduct within Congress' Commerce Clause Authority.

    **2.**     **Possession of a Stolen Firearm: 922(j)**

Section 922(j) makes it "unlawful for any person to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition . . . which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, either before or after it was stolen, knowing or having reasonable cause to believe that the firearm or ammunition was stolen." 18 U.S.C. § 922(j).  Defendant asserts that, like § 922(g)(1), the foregoing statute contains a jurisdictional element that purports to limit its reach to firearms with

5

a nexus to interstate commerce, but the element is "meaningless as a practical limit on federal power" because it "is so broad as to encompass virtually all firearms" [Doc. 20, pg. 9]. Again, Defendant asserts that the Government has failed to allege any connection to interstate commerce "beyond the firearm's presumed out-of-state manufacture" [*Id.*].

Similar to § 922(g), the jurisdictional element in § 922(j) provides the requisite nexus to interstate commerce. *See United States v. Luna*, 165 F.3d 316, 321 (5th Cir. 1999) (the language "shipped or transported in, interstate or foreign commerce" likewise provides the requisite nexus to commerce that was lacking in *Lopez*."). Additionally, the fact that a stolen firearm was manufactured outside the state of possession is sufficient to establish the jurisdictional element, *i.e.*, that the firearm had traveled in interstate commerce. *See United States v. Redd*, 29 F. App'x 290, 305 (6th Cir. 2002). Accordingly, the Government's allegation that the stolen firearm allegedly possessed by Defendant was manufactured outside of the state of possession establishes a sufficient nexus to interstate commerce to bring Defendant's conduct within Congress' Commerce Clause Authority.

### 3. Carjacking: 18 U.S.C. § 2119

Section 2119 makes it unlawful for a person to "take[ ] a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation . . . with the intent to cause death or seriously bodily harm[.]" 18 U.S.C. § 2119. Defendant asserts that "the mere fact that a vehicle has at some point traveled in interstate commerce does not establish a sufficient nexus under *Lopez* and *Morrison*" [Doc. 20, pg. 10]. It is well-established that the federal carjacking statute is "a valid exercise of Congress's commerce power." *United States v. McHenry*, 97 F.3d 125, 126 (6th Cir. 1996). It is further established that the jurisdictional element of § 2119 can be established by proof

6

that the vehicle was manufactured outside the state and, of consequence, previously traveled in interstate or foreign commerce. *See United States v. Johnson*, 22 F.3d 106, 109 (6th Cir. 1994). Thus, the Government's allegation that the vehicle at issue was manufactured outside of Tennessee establishes a sufficient nexus to interstate commerce to bring Defendant's conduct within Congress' Commerce Clause Authority.

### 4. Use of a Firearm During a Crime of Violence: 18 U.S.C. § 924(c)

Section 924(c) makes it unlawful, in relevant part, to use or carry a firearm "during and in relation to any crime of violence or drug trafficking crime[.]" 18 U.S.C. § 924(c). Because this charge against Defendant is predicated on the alleged carjacking offense, Defendant asserts that it "lacks a valid jurisdictional hook to interstate commerce" to the same extent that the carjacking offense exceeds Congress' Commerce Clause authority [Doc. 20, pg. 10]. As stated above, the Government has alleged a sufficient nexus to interstate commerce to bring the carjacking charge within Congress' authority under the Commerce Clause. Thus, there is also a sufficient nexus for the § 924(c) charge.

Based on the foregoing, each of the statutes Defendant is charged under fall within Congress' authority under the Commerce Clause and the Government has alleged a sufficient nexus between the charged conduct and interstate commerce. Accordingly, Defendant's Motion to Dismiss the Indictment [Doc. 20] is **DENIED**.

### III. MOTION TO DISMISS COUNT THREE

Defendant moves to dismiss Count Three of the Indictment to the extent it alleges his eligibility for an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e) [Doc. 21]. The ACCA mandates a 15-year minimum sentence for violations of section 922(g) when the Defendant "has three previous convictions . . . for a violent felony or a serious

7

drug offense, or both, committed on occasions different from one another[.]" 18 U.S.C. § 924(e)(1). Count Three of the Indictment charges Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and provides notice of the ACCA enhancement based on the following prior offenses of conviction: robbery in Dallas County; burglary of a building in Ellis County, Texas; burglary of a habitation in Ellis County, Texas; and burglary of a habitation in Dallas County, Texas [Doc. 1].

Defendant asserts that his burglary convictions do not qualify as ACCA predicate offenses [Doc. 21, pg. 2]. The ACCA defines the term "violent felony" to include any felony, whether state or federal, that "is burglary, arson, or extortion…." 18 U.S.C. § 924(e)(2)(B)(ii). "In listing those crimes . . . Congress referred only to their usual or . . . generic versions—not to all variants of the offenses." *Mathis v. United States*, 579 U.S. 500, 503 (2016). "Although the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 598 (1990).

"To determine whether a prior conviction is for generic burglary . . . courts apply what is known as the categorical approach: [t]hey focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case." *Id*. Accordingly, "[a] crime counts as 'burglary' under the [ACCA] if its elements are the same as, or narrower than, those of the generic offense." *Id*. However, "if the crime of conviction covers any more conduct than the generic offense, then it is not an ACCA 'burglary'—even if the defendant's actual conduct (*i.e.*, the facts of the crime) fits within the generic offense's boundaries." *Id*. Defendant asserts that Texas "burglary" is not an ACCA predicate offense because it criminalizes more conduct than generic burglary [Doc. 21, pg. 2].

8

Texas law at the time of Defendant's conviction provided that "a person commits [burglary] if, without the effective consent of the owner, the person:"

> (1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or
>
> (2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or
>
> (3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

Tex. Penal Code Ann. § 30.02(a) (2013). Because subsection (a)(3) lacks a specific intent element, Defendant asserts that Texas burglary is broader than the generic offense, which requires the intent to commit a crime [Doc. 21, pg. 4]. Specifically, Defendant argues that Texas burglary "departs from the generic definition of burglary" because "it covers unlawful entry plus commission of any form of assault, which in Texas can be committed recklessly" [*Id*. at pg. 6]. Sixth Circuit precedent, however, forecloses Defendant's argument.

The Sixth Circuit has held, on numerous occasions, that a burglary conviction under Tennessee law "categorically counts as a burglary under the Supreme Court's generic definition and so falls within [the ACCA]." *United States v. Brown*, 957 F.3d 679, 682 (6th Cir. 2020) (citing *United States v. Nance*, 481 F.3d 882, 888 (6th Cir. 2007)); *see United States v. Gann*, 827 F. App'x 566, 569 (6th Cir. 2020); *United States v. Ferguson*, 868 F.3d 514, 516 (6th Cir. 2017); *United States v. Priddy*, 808 F.3d 676, 684 (6th Cir. 2015). And Tennessee's burglary statute is nearly identical to the Texas statute. The burglary statute, formerly codified at Tenn. Code Ann. § 39-14-402, provides, in relevant part, that "[a] person commits burglary who, without the effective consent of the property owner:"

> (1) Enters a building other than a habitation, or any portion of the building, not open to the public, with intent to commit a felony, theft, or assault;

9

(2) Remains concealed, with the intent to commit a felony, theft, or assault, in a building;

(3) Enters a building and commits or attempts to commit a felony, theft, or assault[.]

Tenn. Code Ann. § 39-13-1002(a)(1)–(3). Additionally, like Texas law, an assault in Tennessee includes "[i]ntentionally, knowingly, or *recklessly* caus[ing] bodily injury to another[.]" Tenn. Code Ann. § 39-13-101(a)(1) (emphasis added). Thus, to the same extent that a conviction under subsection (a)(3) of the Tennessee burglary statute "fit[s] within the generic definition of burglary" and is a violent felony for purposes of the ACCA, *Ferguson*, 868 F.3d at 515 (citing *Priddy*, 808 F.3d at 684–85), a conviction under subsection (a)(3) of the parallel Texas burglary statute also fits within the generic offense's boundaries.

Courts outside of the Sixth Circuit have also reached the same conclusion when examining the Texas burglary statute for purposes of the ACCA. *See United States v. Hutchinson*, 27 F.4th 1323, 1327 (8th Cir. 2022), *cert. denied sub nom. Tinlin v. United States*, 143 S. Ct. 1054 (2023) ("§ 30.02(a)(3) contains the generic specific intent requirement necessary for a conviction under this statute to qualify as a predicate offense for purposes of the ACCA."); *United States v. Herrold*, 941 F.3d 173, 179 (5th Cir. 2019) (holding that "that Section 30.02(a)(3) is generic" and "Texas law rejects [a] no-intent interpretation"); *United States v. Bonilla*, 687 F.3d 188, 193 (4th Cir. 2012) (noting that § 30.02(a)(3)'s element of an attempted or completed crime inherently requires an intent to commit that crime), *cert. denied*, 571 U.S. 829 (2013). Accordingly, Defendant's prior burglary convictions qualify as predicate offenses under the ACCA and his Motion to Dismiss [Doc. 21] is **DENIED**.

### IV. MOTION TO SEVER

Defendant moves to sever Counts One and Two from Counts Three and Four of the Indictment in this matter, pursuant to Fed.R.Crim.P. 8 and 14 [Doc. 23]. An indictment "may

10

Case 2:23-cr-00101-DCLC-CRW   Document 68   Filed 09/24/24   Page 10 of 12   PageID #: 341

charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed.R.Crim.P. 8(a). "If the joinder of offenses . . . in an indictment . . . appear to prejudice a defendant or the government, the court may order separate trials of counts . . . or provide any other relief that justice requires." Fed.R.Crim.P. 14(a). "If joinder . . . does not comply with the requirements of Rule 8, the district court has 'no discretion on the question of severance.'" *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002) (citation omitted). However, the decision to sever pursuant to Rule 14 is within the sound discretion of the court. *Zafiro v. United States*, 506 U.S. 534, 538–39 (1993).

Here, Defendant asserts that the first two counts (carjacking and brandishing a firearm during the carjacking) are improperly joined with the second two counts (felon in possession of a firearm and possession of a stolen firearm) "because they involve two distinct incidents separated by time, location, and circumstances" [Doc. 23, pg. 1]. Additionally, Defendant asserts no evidence links the alleged firearm possession to the alleged carjacking [*Id*. at pg. 3]. The Government asserts that the alleged firearm possession is part of the same act or transaction as the carjacking and that both incidents are connected with the same scheme [Doc. 30, pg. 9].

The allegations indicate that Defendant brandished a small black firearm during the commission of the carjacking and, the next day, a pistol of similar description was discovered to be stolen from his father and found in his fanny pack. Moreover, the Government alleges that there is evidence showing that Defendant armed himself the morning after the alleged carjacking because law enforcement was looking for him and he did not want to go back to prison. Based on the foregoing, the carjacking incident on May 24, 2023 and the firearm possession on May 25, 2023 "spring from the same series of events or factual background." *Chavis*, 296 F.3d at 460.

11

Accordingly, each of the offenses are sufficiently connected for joinder to be proper under Rule 8(a).

Defendant alternatively asserts that severance is necessary "to prevent substantial prejudice" due to the "significant differences between the charged conduct and the potential for jury confusion" [Doc. 23, pg. 1]. As stated above, there are not significant differences between the alleged incidents. Rather, they are tied together in such a way as to render the temporal and geographic separation insignificant. To the extent that Defendant expects to be prejudiced by joinder due to the risk that the jury will be confused or will improperly infer his guilt on one count based upon the evidence on another count, the danger of such prejudice "can be reduced significantly by proper curative instructions" or "limiting instructions" *Chavis*, 296 F.3d at 461–62. Finally, to the extent Defendant argues that "the inflammatory nature of the prior felony evidence in Count Three" will "create a level of prejudice that limiting instructions cannot adequately cure[,]" [Doc. 23, pg. 5], the Court, in a separate order, has bifurcated the trial to avoid such prejudice. Accordingly, for the reasons stated herein, Defendant's Motion to Sever [Doc. 23] is **DENIED**.

**SO ORDERED:**

s/Clifton L. Corker  
United States District Judge